## Sheaffer *versus* Eakman.

1. If evidence is admissible for any purpose, its admission is not error, although it has no legal tendency to support another ground in the cause.

2. In ejectment, declarations made to the plaintiff or one under whom he claimed, by a tenant of defendant, were held admissible.

3. Declarations of a defendant in ejectment, made while he is in possession, may be given in evidence in his favor, even if they amount to an assertion of boundaries.

4. Evidence of declarations of tenants made whilst they were in possession, that they held either mediately or immediately under the defendant in ejectment, held to be admissible.

[Sheaffer v. Eakman.]

5. The character of a possession may be shown by the contemporaneous declarations of the tenant, especially to make out a title under the Statute of Limitations in the party offering them, by his own possession or that of his tenants.

6. Declarations of a tenant made at the time of the possession, and tending to show its character, are part of the *res gestæ*, and may be given in evidence, although the tenants are alive and might be called as witnesses.

7. Declarations of a tenant that part of the property he leased and occupied was not his landlord's, were held not to be admissible against his landlord.

8. The court charged: "To enable the defendants to hold by the Statute of Limitations, they must show that they by themselves or their tenants held the exclusive, actual, continued and peaceable possession, uninterrupted and acquiesced in, for a period of twenty-one years. It is not necessary that it should be enclosed, but if a residence was kept up on any part of it, using the woodland for timber or firewood or farming purposes, and holding and claiming by fixed boundaries for twenty-one years, the defendants would have a good title by the Statute of Limitations. If the title, legal or equitable, was out of the Commonwealth, any interruption of the possession or abandonment of it for any length of time, and a resumption of it afterwards, would defeat the title by the Statute of Limitations." *Held*, not to be error under the circumstances of the case.

9. An adverse and hostile possession is one held for the possessor, as distinguished from one held in subordination to the right of another, or inconsistent with the latter's possession or rights.

10. An exclusive possession of one who is not in privity with the owner of the land is an adverse and hostile possession.

November 1st 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Armstrong county :* No. 8, to October and November Term 1867.

This was an action of ejectment, in which Catharine Sheaffer, who was widow and devisee of Peter Sheaffer, deceased, was plaintiff and Peter Eakman, Edward W. Schenley and Mary E. his wife, and Matthew Scott, were defendants. The writ was issued May 19th 1859, for 20 acres of land in Allegheny township, Armstrong county. The case had been tried and a verdict and judgment rendered for the plaintiff; the judgment was reversed by the Supreme Court, and a *venire de novo* awarded; it was again tried, November 12th 1866, before Campbell, P. J., of the 18th district.

The plaintiff gave in evidence a warrant, dated October 3d 1824, for 150 acres of land where Peter Sheaffer made an actual settlement, adjoining John Montgomery on the north, Robert McKee on the east, John Collier on the south and John Elder on the west, executed May 12th 1835, and patent, dated June 8th 1836, to Peter Sheaffer.

A tract of land was regularly surveyed to John Montgomery and Alexander Stewart at the junction of the Kiskiminitas and Allegheny rivers for 58 acres, and returned March 4th 1773, and another " on the east side of the Allegheny river and along the

6 P. F. SMITH—10

Kiskiminitas" to John Elder on the 6th of June 1770. The title to these tracts became vested in John Morrison May 21st 1796. Morrison conveyed the one undivided half of both tracts, on the 27th of August 1803, to James O'Hara. O'Hara's interest was regularly vested in Mary E. Schenley, the defendant, on the 15th of August 1848, and, of the other half remaining in Morrison, two-thirds were vested, September 1st 1837, in William Scott, and the whole of that half in Matthew Scott, the other defendant, June 6th 1857.

The Sheaffer tract lay east of the Montgomery and Stewart tract, and between that and the Elder tract; the owners of the Montgomery tract and of the Sheaffer tract each claiming that the 20 acres in dispute was in their survey. This involved the inquiry where was the dividing line between the Montgomery and the Sheaffer, and also on which of the tracts Eakman's house was ?

The plaintiff, in addition to evidence of his original title, gave evidence for the purpose of fixing the Montgomery line so as to exclude the land in dispute from that survey, and some of his testimony tended to show that such was the case; he also gave evidence of his clearing the land since 1815, and of his being in possession of it for more than twenty-one years.

The defendants gave in evidence their paper title, and evidence that the land was in the Montgomery survey. They also gave in evidence a lease, dated November 30th 1819, from James O'Hara to Samuel and William Foreman of the land owned by him and Morrison, described as " a certain farm or tract of land situated in the forks of the Kiskiminitas and the Allegheny rivers, whereon the said Samuel and William now reside, and the said Samuel and William covenant and agree to pay to the said James, his heirs or assigns, the sum of twenty dollars and keep the fences in good order and repair, and to deliver up the said premises peaceable and in good order and repair at the expiration of one year from 1st of April next."

The defendant examined Samuel Mitchell as a witness, who testified: From 1831 to 1836 Samuel Foreman took care of the O'Hara land; he also testified as to the boundaries of his occupancy, which were about 5 rods above Eakman's house, and that he took timber from the woodland; that Sheaffer's farm was above this; also that Sheaffer had asked him once, when he was repairing a road, if he knew he was on his (Sheaffer's) land; that he said he did, Foreman had shown him the line that day; Sheaffer said Foreman knew the line well; he then took witness towards Eakman's, to what he said was the corner, a white-oak, and asked witness if that was the one shown him by Foreman, witness replied that it was; that the witness had examined the corner when Foreman showed it and when Sheaffer showed it, and often

[Sheaffer v. Eakman.]

afterwards; that Foreman said he was agent for the O'Hara lands; that a man named Mealman, who was there, said he was there by authority of Foreman; that Walker and Smith went in under Foreman; witness saw the contract made.

The plaintiff at this point objected to "the above testimony of Mitchell as to the declarations of Foreman as to corners and lines, and all the tenants as to how they held, and under whom;" it was admitted, and a bill of exceptions sealed.

The defendant then offered the deposition of Jane Walker; objection was made "to the declarations of Foreman as to who he lived under," but it was admitted, and a bill of exceptions sealed. The witness testified that Samuel Foreman, who was her father, resided on the land in dispute, he went there in 1820, resided three years, got the O'Hara agency and moved back in 1825, remained under him till his death, and then under Harmar Denny, his executor; he lived there above twenty years without any one molesting him; that the witness, with her husband, lived in the Eakman house under Foreman; that she knew her father was agent from his saying so, and the witness paying rent to him. She testified also as to the extent of the occupancy of Foreman.

The defendants called Andrew Eakman, who was admitted to state, under objection and exception, the declarations of Foreman and Peter Eakman as to how the latter held. He said that Peter Eakman built a house and grocery shop, and lived there in June 1836, and the next year built and lived in another house on the tract, that he did all under Foreman; that in 1839 he rented the farm and had been there ever since; that he worked all the cleared land and cleared more, that he rented from Foreman; that Eakman also moved into what had been a contractor's office on the tract; that Eakman rented of William Scott; he heard both Foreman and Eakman say this.

The defendants gave much evidence also as to their possession with reference to the Statute of Limitations.

In rebuttal, the plaintiff proposed to prove by John Klingensmith that Foreman pointed out to witness where he claimed to, and the extent of his possession, to rebut the running of the Statute of Limitations. The court ruled out the declarations of Foreman and all the other tenants as to the boundaries of the survey, but allowed the plaintiff to rebut the evidence of possession and show that it covered less than claimed by defendants; and sealed a bill of exceptions at the request of the plaintiff.

Plaintiff also offered to prove, by Joseph Lessick, that when the witness was assessor in 1846, Peter Eakman, the tenant in possession, refused to have the disputed piece assessed to his landlord as part of the Denny tract, alleged it belonged to Sheaffer and directed it to be assessed to him. The offer was rejected, and at the plaintiff's request a bill of exceptions was sealed.

[Sheaffer *v.* Eakman.]

The plaintiff's 1st and 8th points and the answers of the court are as follows :—

"1. If the jury believe, from the whole evidence in the cause, that the land in dispute is not within the lines of the John Montgomery and Alexander Stewart survey, as made by Joshua Elder, and returned to the land office, then the land was vacant and the plaintiff is entitled to recover by virtue of his actual settlement and improvement, and designation and claim of boundaries up to the Montgomery survey."

"We answer that Sheaffer might open the lines of his improvement and extend them to the extent of 400 acres, up until the time he returned his official survey into the land office ; after that he could not without an order for a resurvey.    As thus explained, we answer this point in the affirmative."

"8. To create title by the Statute of Limitations, the evidence must show an actual, visible, peaceable, continued, uninterrupted, adverse, open, notorious and hostile possession for a period of twenty-one years.    That an interruption for one or two years would be a bar to the claim under the statute, and that the evidence in this case is not sufficient to enable the defendants to shelter themselves under that plea."

"We answer this point, that if the land in dispute is not within the John Montgomery survey, in order to enable the defendants to hold by the Statute of Limitations, they must show to the satisfaction of the jury that they by themselves or their tenants held the exclusive, actual, continued and peaceable possession, uninterrupted and acquiesced in for a period of twenty-one years ; it is not necessary that it should be enclosed, but if a residence was kept up on any part of it, using the woodland for timber, and firewood and farming purposes, and holding and claiming by fixed boundaries for twenty-one years, the defendants would have a good title by the Statute of Limitations.    If the title, legal or equitable, was out of the Commonwealth, any interruption of the possession or abandonment of it for any length of time, and a resumption of it afterwards, would defeat the title by the Statute of Limitations.    We refuse to take the facts from you, but instruct you that if the possession was such as we have stated, it would not avail."

The defendant's 5th point and the answer were :—

"If the jury find from the evidence that the defendants, and those claiming under them, and those under whom they claim, have occupied the land in dispute by actually living upon and enclosing and cultivating the same for a period exceeding twenty-one years before this suit was brought, the defendants will hold the land without regard to the original surveys."

"We answer this point in the affirmative, if the possession was as we have designated in answer to plaintiff's 8th point."

[Sheaffer v. Eakman.]

The verdict was for the defendants.

The plaintiff took a writ of error.

The 1st assignment of error was, "In admitting the testimony of Samuel Mitchell, as to the declarations of Samuel Foreman, as to corners and lines, and the declarations of all the tenants as to how they held and under whom."

The 2d assignment was the admission of "Foreman's declarations as to whom he held under," and the 3d, the admission of "declarations of Foreman and Eakman as to how the latter held."

The 4th and 5th assignments were the rejection of the evidence of Klingensmith and Lessick, contained in the bills of exception.

The 6th assignment was the answer to the plaintiff's 1st point; and the 7th and 8th the answers to the plaintiff's 8th point and the defendant's 5th point.

*J. Boggs*, for plaintiff in error, cited 1 Stark. on Ev. (7th ed.) 352–3; Peaceable v. Watson, 4 Taunt. 16–17; West Cambridge v. Lexington, 2 Pick. 536; Little v. Sibley, 2 Greenlf. R. 242; Doe v. Petitt, 5 B. & Ald. 223; Crone v. Nicholl, 1 Bing. Jr. 457; Smith v. Martin, 17 Conn. R. 399; Davies v. Pierce, 2 T. R. 53; Doe v. Reckarly, 5 Esp. 4; Doe v. Payne, 1 Stark. R. 69; Stanley v. White, 14 East 332; 3 Bac. Ab. 634; Sailor v. Hertzogg, 2 Barr 185; Andrews v. Fleming, 2 Dall. 93; Weidman v. Kohr, 4 S. & R. 174; Peake's Ev. 182; Jackson v. Baird, 4 Johns. 233; Criswell v. Altemus, 7 Watts 566; Hockenbury v. Snyder, 2 W. & S. 240; Carpenter v. Mayer, 5 Watts 483; Noble v. McClintock, 6 W. & S. 58.

*E. S. Golden* and *H. D. Foster*, for defendants in error, cited Schmoyer v. Schmoyer, 5 Harris 520; Morgan v. Weir, 1 Casey 119; Allegheny City v. Nelson, Id. 332; Thomas v. Mann, 4 Id. 520; Brewster v. Sterrett, 8 Id. 115; Ormsby v. Ihmsen, 10 Id. 462; Eakman v. Sheaffer, 12 Wright 176; Potts v. Everhart, 2 Casey 493; St. Clair v. Shale, 9 Barr 252; Kirkpatrick v. Vanhorn, 8 Casey 131.

*S. A. Purviance*, for plaintiff in error, in reply, cited Nearhoff v. Addleman, 7 Casey 281; Martin v. Jackson, 3 Id. 510; McCall v. Coover, 4 W. & S. 162; Adams v. Jackson, Id. 81; Waggoner v. Hastings, 5 Barr 300; Hoopes v. Garver, 3 Harris 527; Long v. Mast, 1 Jones 195; Sailor v. Hertzogg, 10 Barr 296.

The opinion of the court was delivered, November 7th 1867, by

STRONG, J.—There were two prominent questions in this case, both questions of fact. The first was whether the land in con-

troversy was included in what is called the Montgomery survey, the title to which has become vested in the defendants. This involved the inquiry where was the dividing line between that survey and the tract of land patented to Peter Sheaffer, under whom the plaintiff claims. It was therefore substantially a question of location. The second prominent question was whether the defendants had acquired a title under the Statute of Limitations. This was of importance only in case their title under the Montgomery warrant and survey failed. Standing thus upon two grounds of defence, it may well have been that evidence was admissible in support of one, which had no legal tendency to support the other, and which ought not to have been received, if that other ground of defence had been the only one. And it is this which has given rise to some of the difficulty of the case. If, however, the evidence was admissible for any purpose, there is no just ground of complaint, especially if the court confined its operation within the limits where it was legitimately entitled to consideration. Keeping these reflections in mind, we pass to the consideration of the errors assigned. The first three may be considered together. They present two alleged errors. The 1st is that there was error in permitting Samuel Foreman's declarations respecting the " corners and lines of the surveys" to be given in evidence. It is enough to say of this that no such evidence appears to have been given. The objection was not made, or exception taken, until after the witness had testified, and then the plaintiff objected to the testimony (in the language of the exception) " as to the declarations of Foreman as to the lines and corners." Now, it is obvious that if none of Foreman's declarations respecting lines and corners had been given, the plaintiff was not injured by the ruling of the court, or by a refusal to strike out the testimony. The exception is a complaint of the admission of such declarations of Foreman as proved by Mitchell. But Mitchell did not testify that Foreman said anything of the lines and corners. At least he did not testify this directly. Certainly no such declaration is to be found in the testimony as exhibited to us in the paper-books. There is nothing more than the fact that Mitchell had told Sheaffer, the predecessor in title of the plaintiff, that Foreman had showed him the line; that Sheaffer had replied, " Foreman knows the line well ;" that they went over the line together ; that Sheaffer asked if a corner was one Foreman had shown, to which the witness replied it was, and that the witness examined the corner (a white-oak), first when Foreman showed it to him, also when Sheaffer showed it, and often afterwards. Now, if this can be regarded as a statement of declarations made by Foreman, it was a statement made to the plaintiff, or the person under whom the plaintiff claims, and it was plainly admissible. In Potts *v.* Everhart, 2 Casey 493, it

[Sheaffer v. Eakman.]

was ruled, that the acts and declarations of a defendant in eject-ment himself, made while he is in possession of land, may be given in evidence in his favor, even if they amount to an asser-tion of boundaries.

The first three assignments of error also raise the question whether it was competent for the defendants to give in evidence the declarations of Foreman and other tenants that they held mediately or immediately under the defendants. They were made while the tenants were actually living upon the land. We see no valid objection to the admission of such evidence. The character of a possession may always be shown by contemporane-ous declarations of the tenant, and especially is this true when the party who offers them is endeavoring to make out a title under the Statute of Limitations by his own possession and that of tenants, or by the latter alone.

The only objection to this urged here is that the tenants are alive, and might have been called as witnesses.

That, however, does not appear, except perhaps in the case of one tenant, nor does it appear that this objection was made in the court below. Even if it had been, it must have proved unavail-ing. The declarations were part of the res gestæ, made at the time of the possession, and tending to show its character. The first three assignments of error are therefore not sustained.

The 4th assignment is founded upon a misapprehension of what the court ruled. The plaintiff proposed to prove by John Klingen-smith that Foreman (one of the tenants of the defendants) pointed out to the witness where he claimed to, and the extent of his possession, to rebut the running of the Statute of Limitations. The offer did not state whether the act of Foreman proposed to be proved took place during his tenancy, and while he was in possession, but assuming that it did, the court ruled that the declarations of Foreman and all other tenants could not be received to show *the boundaries of the survey*, but allowed the plaintiff to rebut the evidence of possession, and show that it covered less than claimed by the defendants.

To understand this we must look at it as it appeared on the trial in the court below. In answer to an objection to the plain-tiff's offer the court said in effect, the *boundaries* of the Montgo-mery survey are not to be affected by the declarations of the tenants, but the plaintiffs may show by any legal evidence the extent of their possession. This was not overruling the offer, but rather its acceptance, and if the evidence was not given as at first proposed, it was not the error of the court that prevented it. It was because of a misunderstanding of what the court did rule, induced probably by temporarily overlooking the fact that the defendants asserted two grounds of defence. It is argued now that it was intended to rebut other declarations of Foreman

made to Mitchell, that Foreman had pointed out to him a certain corner, but it was not offered for such a purpose, or generally. The purpose was specified. Besides, it had no tendency to disprove the fact testified to by Mitchell, and whether it had or not, it was not rejected.

The 5th assignment is that the court erred in rejecting testimony offered by the plaintiff to prove that Peter Eakman, one of the defendant's tenants in 1846, refused to permit the assessor to assess the disputed tract of land as the property of his landlord, or as part of the landlord's tract, alleging that it belonged to Sheaffer, and directed it to be assessed as Sheaffer's. It would certainly be very extraordinary, if a tenant put into possession of land and owing fealty to his landlord, bound to protect his landlord's possession, could be allowed to confess away that landlord's title. Had he surrendered the possession to Sheaffer, Sheaffer could have gained nothing by it. How, then, can he profit by such a declaration, which is much less than a surrender: see Eakman *v.* Sheaffer, 12 Wright 176.

The 6th assignment charges error in the answer given by the court to the plaintiff's 1st point, in assuming that the plaintiff opened his lines by saying that he might open the lines of his improvement and extend them to the extent of 400 acres, up until the time he returned his official survey into the land-office; after that he could not without an order for a resurvey. The plain meaning of this is, that the plaintiff having an improvement younger than the Montgomery survey, might extend his claim in virtue of it, until he had defined it by an official survey returned. There is no error in this of which the plaintiff can complain.

There remains nothing but the consideration of the 7th and 8th assignments, which present the most important question in the case. The plaintiff requested the court to charge the jury, "that to create title by the Statute of Limitations, the evidence must show an actual, visible, peaceable, continued, uninterrupted, adverse, open, notorious, and hostile possession for a period of twenty-one years; that an interruption for one or two years would be a bar to the claim under the statute, and that the evidence in the case was not sufficient to enable the defendants to shelter themselves under that plea. This point as a whole might have been denied, for it took the case away from the jury, and there was certainly too much evidence of an adverse possession, such as makes a title, to be withdrawn from a jury. It was not however negatived. The court submitted the evidence with the instruction, that in order to enable the defendants to hold by the Statute of Limitations, they must show to the satisfaction of the jury that they, by themselves or tenants, held the exclusive, actual, continued and peaceable possession, uninterrupted and acquiesced in for a period of twenty-one years. That it was not

[Sheaffer *v.* Eakman.]

necessary the land should be enclosed, but if a residence was kept on any part of it, using the woodland for timber or firewood, or farming purposes, and holding and claiming by fixed boundaries for twenty-one years, the defendants would have a good title by the Statute of Limitations. And that any interruption of the possession, or abandonment of it for any length of time, would defeat the title. It is not material that the point presented was not answered in the words in which it was stated; if all its substance was affirmed, that is sufficient. But the plaintiff complains that the answer was not as full as it should have been; that it omitted two essential requisites of the possession necessary to perfect a title, to wit, that it must be adverse and hostile, and that it must be visible and notorious. We think, however, what the learned judge did say was in effect that the possession must be both adverse and notorious, or visible. The charge is to be understood as having reference to the case on trial. There was no pretence that the defendants held possession under the plaintiff. If, therefore, they held exclusively, their possession was adverse and hostile. An adverse and hostile possession is one held for the possessor, as distinguished from one held in subordination to the right of another. In other words, it is a possession inconsistent with the possession or right of possession by another. And such is an exclusive possession of one who is not in privity with the true owner of the land. By instructing the jury, as the judge did, that the possession must be exclusive, they were in effect told, therefore, that it must be adverse, and the plaintiff had no right to more. So the meaning of the charge was, that the possession was visible and notorious. What else did the court mean by saying that the possession must be acquiesced in; that though enclosure of the land was not necessary, yet if a residence was kept up on any part of it, and the woodland was used for timber or firewood, or farming purposes, and the land was claimed and held by fixed boundaries, the defendants would have a good title by the Statute of Limitations. Visible and notorious are terms employed to denote that the possession must be more than secret, and unknown to the disseised owner. But how can possession be secret, which a disseised owner acquiesces in? This acquiescence implies knowledge, and hence a possession that he permits is notorious, or known to him. We hold firmly that all the acknowledged requisites of a possession, efficient to bar the entry of a claimant to land, must appear. We have no disposition to relax the rules already established. Still it is the substance and not the form of the rules which is to be regarded. And we think that in this case, the point of the plaintiff in all essential particulars was affirmed.

It follows that no error appears on the record.

Judgment affirmed.