CASE 45—ACTION BY SOUTH, &C. AGAINST DEATON TO RECOVER LAND.

# South, &c. v. Deaton.

### APPEAL FROM BREATHITT CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS.    AFFIRMED.

EJECTMENT—TITLE BY POSSESSION—EXTENT OF POSSESSION—INSTRUC-
TION TO JURY—EXECUTION OF LEASES AS EVIDENCE OF CLAIM OF
OWNERSHIP—ESTOPPEL OF TENANT TO DENY LANDLORD'S TITLE.

Held:   1. Though plaintiffs in ejectment claimed title by posses-
sion, and not under a certain deed, yet, as the deed was in evi-
dence, it was proper to instruct the jury that mere posses-
sion under the deed, and within its limits, did not of itself
give possession of land outside the deed boundary, and that, in
order to establish possessory title outside the deed boundary,
there must be possession or claim outside of that boundary.

2. Where plaintiffs in ejectment, relying upon a possessory title,
claimed that they had for fifteen years been in the adverse pos-
session of a large boundary of land, only a part of which was
in controversy, it was admissible for them to prove that they
had executed leases of various parts of the boundary not in con-
troversy, as tending to show exercise of ownership over the en-
tire boundary.

3. As a tenant is estopped to deny his landlord's title only in a con-
troversy between the parties themselves, plaintiffs in ejectment
claiming title by possession having proved the execution of leases
by them, as tending to show claim of ownership, the lessees
were competent witnesses for defendant to show that they claim-
ed the land as their own.

J. J. C. BACH, W. S. PRYOR AND JOHN W. RAY, ATTORNEYS FOR
APPELLANTS.

The first and only inquiry we think is whether the appellants
made out a *prima facie* case?

We think this was conceded by appellee for there was no
motion at the close of appellant's testimony for a peremptory
instruction to find for the appellee.

The appellants, who were plaintiffs below, relied solely on ti-
tle by prescription.

We claim that J. W. South acquired possession to the extent
of his marked boundary which we claim and have shown, in-

South, &c. v. Deaton.

cluded all the land in controversy. That South died in 1880, and Cardwell, his son-in-law took charge of this land and leased the whole of it to George Deaton, who. is still on the land and has been there continuously for twenty years before the institution of this suit. The record shows the boundary to be a natural one and the undenied pleadings show it to be a marked one.

We insist that there was no competent evidence offered by appellee to rebut the *prima facie* case made out by appellants.

We claim that the verdict is against the evidence.

That the court erred in permitting witnesses to state that certain other parties claimed the land as their own in the face of the admitted fact that that person had entered and held under a written lease from appellants, and that the party himself when sworn as a witness did not claim against the lease.

The court erred in the instructions given, in that it ignored certain documentary evidence, and instructed in the face of that proof—instructed that a lease on one tract could not extend over on another tract whereby the lease itself showed it did extend over both tracts.

The court also erred in submitting to the jury the question as to whether certain persons held under a lease, when the lease itself was introduced and its execution admitted by the party.

### AUTHORITIES CITED.

Campbell v. Thomas, 9 B. Mon., 82; Thomas v. Harrow, &c., 2 Bibb, 564; Taylor v. Buckner, 2 Mar., 19; Roberts v. Sanders, 3 Mar., 30; McLauren v. Simpson, 11 B. M., 98; Chiles v. James, 7 Dana, 533; Cook's Heirs v. Totten's Heirs, 6 Dana, 110; Thurstin v. Masterman, &c., 9 Dana, 233; Winston v. Gwathmey, 8 B. Mon., 20, Burgin v. Chenault, &c., 9 B. M., 287; Terry v. Johnson, 96 Ky., 98; Keaton v. Sublett, 22 R., 633; Henry v. Clark, 4 Bibb, 426; Shirner v. Dickerson, 1 Mon., 5; Maury v. Waugh, 1 Mar., 452; Jones v. Chiles, 2 Dana, 29.

MARCUM & POLLARD, ATTORNEYS FOR APPELLEE.

### POINTS AND AUTHORITIES.

1. The entry of a tenant on a tract of land owned by his landlord, under a lease covering it and an adjoining tract not owned, will be construed to give him possession to the former tract only. But if the tenant enter on the tract not owned by his lessor, under a lease for both tracts, his possession will extend to both, a distinction being taken between a case where the entry is to have the effect of vesting or divesting the estate, and a case

where the estate is already in the person making such entry. Trimble v. Smith, 4 Bibb, 257; Fox v. Hinton, 4 Bibb, 559; 3 Mar., 27, 3 Mar., 233; 1 Pain (U. S.), 458; Newell on Ejectment, 365; Vanmeter v. Hays, 7 R., 162.

2. The execution of a writing introduced as evidence must be proven by the attesting witness, unless his absence is accounted for, before other evidence of its execution can be heard. Gillespie v. Ashburn, 2 Mar., 80; Griffith v. Huston, 7 J. J. M., 387; McCord v. Johnson, 4 Bibb, 531.

3. Title draws possession to the owner of the fee, and it remains until he is dispossessed, and then no further than actual dispossession by a trespasser, who can not acquire constructive possession, which always remains with the owner. Newell on Ejectment, 431; 1 Pain (U. S.) 458.

4. Plaintiff in ejectment must recover on the strength of his own title, and not the weakness of defendant's title. Bailey v. Tygart Valley Iron Co., 10 R., 258; Ratliff v. Ealam, 14 R., 772.

5. Where plaintiff relies on a possessory title alone it must be adverse, not only as against defendant, but against all the world. Duncan v. Duncan, 25 N. C., 317; Clark v. Diggs, 28 N. C., 159, 468; 44 Am. Dec., 73.

6. An erroneous instruction is not reversible, when under the testimony in the case appellee was entitled to a peremptory instruction. 15 R., 613.

7. When the court gives an erroneous instruction, and appellant asks for and obtains an instruction in substance the same as the one given by the court, he can not be heard to complain of the latter. 14 R., 399.

8. Appellants complain of instruction No. 2 because it limits the possession under the lease to Spicer and Deaton to the Spencer deed; but the Spicer lease was incompetent as evidence, its execution not being proven; and the Deaton lease being less than fifteen years old, they failed to show title.

9. A mere naked possession by plaintiff in ejectment at the time defendant enters is sufficient to authorize a recovery, unless defendant connects himself with the true owner; but if plaintiff fails to ask for an instruction on this point, and the the court fails to give one, even if the evidence showed such a possession, no reversal could be had on that ground, as it is not the duty of the court, in a civil action, to give all the law of the case unless asked to do so. 9 R., 535, 11 R., 486; 7 R., 296.

10. A person who seeks to have the benefit of the adverse possession of his grantor (who had ousted the true owner), and

from whom he claims title by deed, will be limited in his pos-
session to the deed, although his grantor may have been in pos-
session of other lands adjoining those mentioned in the deed.
Newell on Ejectment, 747; 68 Wis., 317; 31 N. W. Rep., 914;
29 Wis., 252.

11. In ejectment defendant may rely on an elder outstanding
title, and thereby disprove plaintiff's right of entry.     Botts v.
Shields, 3 Litt., 35.

12. The right of an elder outstanding patentee is not tolled
by an adverse possession for the statutory period of only part
of the land covered by the elder patent, except so far as the ad-
verse possession extended—nor need defendant in possession con-
nect himself with the outstanding patentee.     Voorhies v. Bridge-
ford, 3 Mar., 27.

13. To enable plaintiff to recover on prior possession alone
he must show himself to have been in the actual possession at
time defendant entered.     Marshal v. McDaniel, 4 Da., 488.

14. When plaintiff introduces incompetent testimony and
thereby makes it necessary for defendant to contradict it by
testimony which would otherwise have been incompetent, he
can not be heard to complain. 4 Da., 41; Litt. Sel. Cases, 499;
5 B. M., 480; 12 B. M., 461.

OPINION OF THE COURT BY JUDGE DURELLE—AFFIRMING.

The appellants, as the heirs at law of J. W. South, who died
in 1880, brought suit in February, 1893, against the appellee,
alleging that their ancestor, at his death, was the owner
and in possession of a tract of land on Wolf creek, on
the south side of the North Fork of the Kentucky river,
not defined by metes and bounds, but described by reference
to the ridges which inclose the Wolf Creek basin, which
appears to be about 3½ miles long, and to contain about
3,000 acres of land.  The petition avers that the land lies
within a grant of 116,656 acres from the Commonwealth of
Virginia to Thomas Franklin in 1784, but this averment is
evidently made for the sole purpose of showing that the
Commonwealth had parted with its title, in order to estab-
lish a title in appellants by adverse possession.  It is al-
leged that J. W. South purchased the land from Joseph

Spencer in 1849, and since that date, and down to June,
1892, appellants and those under whom they claim have been
in the peaceable, uninterrupted, continuous, adverse pos-
session of all the land, holding, claiming, and controlling it
"to the full extent of said boundary, which is a well-defined
natural and artificial and marked boundary," and that the
title in fee simple is vested in appellants by lapse of time,
but that in June, 1892, appellee wrongfully entered upon,
and took possession of, a portion of the land, and built
houses thereon, and has cut and is cutting timber thereon,
and is cultivating and threatening to cultivate a part of the
land. The insolvency of appellee was averred, and an in-
junction prayed to prevent trespasses upon the land. The
answer denied any ownership or possession by appellants
or their ancestor of any of the land, and denied the adverse
possession claimed by appellants to the full extent of the
boundary described, or to any extent. The appellee set up
title to three tracts described by metes and bounds,—one
of 200 acres, and two smaller tracts lying in the Wolf Creek
valley,— and claimed title to such land in him by adverse
possession for more than 15 years. So it appears that the
appellants were endeavoring to establish a title to the lands
held by appellee, Deaton, by adverse possession for 15 years.
while appellee was claiming a similar title in himself to the
land claimed by him, and relying also for his defense upon
a denial of appellants' title. An issue out of chancery to
try the question of title was ordered. The jury found for
appellee.

There were filed with the surveyor's report, and used in
evidence, a number of title papers. Though the claim on
behalf of appellants is that the whole of the Wolf Creek
valley was bought from Joseph Spencer in 1849, no deed to
any part of it was made until 1868, when a deed was exe-

South, &c. v. Deaton.

cuted from the heirs of Joseph Spencer for a tract of land lying at the mouth of Wolf creek, described in the deed as containing 300 acres, but which really contains 378 acres, and which does not touch, and is in fact from two to three miles distant from, the tracts claimed by appellee. This deed refers to a former deed from Duff to Joseph Spencer, and conveys, "also all of the entries or surveys made by Joseph Spencer on Wolf creek, together with, all and singular, the improvements and appurtenances," etc. There was an amended petition, claiming title to the whole valley by adverse possession under title derived from the Commonwealth of Virginia, and this was denied by an answer; but no connection is shown with the Thomas Franklin grant. The record shows that the whole valley was included in the Franklin patent, with which appellants do not connect. A number of leases, dated at various times from 1882 to 1891, from Cardwell, as representative of the South heirs, to various parties living on small tracts of land in the valley, signed by these parties, were exhibited, by which they acknowledged themselves tenants for short periods of time, and agreed to pay a certain amount of corn, or a certain portion of the crop raised, for the use of the land. The only leases which cover the land in controversy, as stated by the witness Cardwell, are one to Benjamin Spicer, dated March, 1850, which is very insufficiently proven, and a lease to George Deaton, dated February, 1881. Some of the lessees were permitted to state, against objection by appellants, that they claimed the land embraced in the leases as their own.

Four instructions were given,—the first and fourth upon motion of appellants, and the second and third on the motion of appellee. There is no objection to the first instruction, which properly states the law to be that if appellants

should show actual, continuous, notorious, and adverse pos-
session for 15 years, the jury should find for them, and, un-
less they so believed, they should find for appellee.   By the
fourth instruction, given on appellants' motion, the jury
were told, "where one enters as a tenant of another upon a
tract of land, that he holds to the extent of the landlord's
boundary lines, unless the lease or contract of renting shows
a different intention."   The second instruction is the one
chiefly complained of by appellants:   "The court instructs
the jury that possession by tenant within the boundary of
land described in the deed from Spencer to South, read in
evidence, did not give possession to any land outside of said
deed; and unless the jury believe from the evidence that
plaintiffs and those under whom they claim had the continu-
ous, actual, uninterrupted, adverse possession outside of
said Spencer deed for more than fifteen years before the fil-
ing of this suit on the 16th day of February, 1893, claiming
the same as the land of J. W. South and his heirs, to a well-
defined boundary, and that said possession covered the land
claimed by defendant, they will find for defendant."   The
third instruction is:   "If plaintiffs placed tenants upon any
of the boundary of land claimed by them, and executed to
said tenants leases, the possession of said tenants extended
only to the limits of the boundary described in said leases
under which they entered and held, if any of them did so
hold."   Now, it appeared that Spicer lived upon the tract
described in the Spencer deed, as did, also, Mart South,
who is claimed to have taken charge of the property after
Spicer, and George Deaton, who held under the later lease.
There can be no objection to the third instruction, especially
when it is considered in connection with the fourth instruc-
tion, which was given on appellants' motion.

The objection urged to the second instruction is that it is

given on the theory that appellants claimed title under the deed from Spencer, and that, as they claimed under that instrument, their claim to possession, when holding by themselves or a tenant within the boundary described therein, should not be extended to take in other land outside of that boundary. But appellants claim that they had adverse possession of the whole Wolf Creek valley for more than 15 years before the deed was executed; that they did not claim under the deed at all, but under their possessory title thus obtained, and therefore it was prejudicial error to limit their possession, as they insist this instruction does, to the boundary described in the deed. The fact remains, however, that the deed was in evidence before the jury, and being in evidence, to be considered by the jury, it was proper they should be instructed that mere possession under the deed, and within its limits, did not of itself give possession of land outside the deed boundary, and that, in order to establish possessory title outside of the deed boundary, there must be possession or claim outside of that boundary. This, we think, is all that this instruction, fairly construed, can be considered to mean; and, though it might have been more clearly expressed, we can not believe that it prejudiced the jury.

As to the statements admitted of various lessees, that they and others in like position claimed to hold in their own right the lands occupied by them, it may be said that this is not a case between such lessees and their landlord, in which an estoppel would arise, subject to be avoided by an averment and proof of fraud or mistake, but a case which is, in effect, an action in ejectment, in which the plaintiff seeks to recover on the strength of a possessory title, and the defendant denies the possession upon which the plaintiff relies. The landlord, in order to show that

he has held possession of all the land in the valley, shows that he has leased various parts of the land which are not in controversy. This is admissible, because those facts show an exercise of ownership over parts of the boundary claimed, and, so far, tend to support his claim of possession of all the land. If those tenants should undertake to show an adverse title as against the landlord, they would be estopped, unless they could show facts to avoid the estoppel. selves from telling the truth, as between their landlord and lord. They are merely witnesses. Can they estop themselves from telling the truth, as between their landlord and a stranger, by the mere signing of a paper which some of them could not read, and which they say they did not understand? The principle of estoppel here invoked is classed by Greenleaf under the head of "Presumptive Evidence" (Greenl. Ev., c. 4): "A man is said to be estopped when he has done some act which the policy of the law will not permit him to gainsay or deny. . . . If it be a recital of facts in a deed, there is implied a solemn engagement that the facts are so as they are recited. The doctrine of estoppels has, however, been guarded with great strictness, not because the party enforcing it necessarily wishes to exclude the truth,—for it is rather to be supposed that that is true which the opposite party has already solemnly recited,—but because the estoppel may exclude the truth. Hence estoppels must be certain to every intent; for no one shall be denied setting up the truth, unless it is in plain and clear contradiction of his former allegations and acts." Id. sec. 22. "The principle that the tenant is estopped to deny his landlord's title applies in all actions between the parties arising out of the tenancy, including suits in equity as well as actions at law." 18 Am. & Eng. Ency. Law, p. 419. The same principle underlies this estoppel which supports the

estoppel by deed. In Penrose v. Griffith, 4 Bin., 231, the court said that the rule of law is that a deed containing a recital of another deed is evidence of the recited deed against the grantor and all persons claiming by title derived from him subsequently: "The reasonable rule is that the recital amounts to the confession of the party, and that confession is evidence against himself and those who stand in his place. But such confession can be no evidence against strangers." Greenl. Ev., sec. 23, note. The rule is based on expediency. Says Greenleaf (section 32): "In these cases of conclusive presumption, the rule of law merely attaches itself to the circumstances, when proved. It is not deduced from them. It is not a rule of inference from testimony, but a rule of protection, as expedient, and for the general good. It does not, for example, assume that all landlords have good titles, but that it will be a public and general inconvenience to suffer tenants to dispute them. Neither does it assume that all averments and recitals in deeds and records are true, but that it will be mischievous if parties are permitted to deny them." The rule is that a tenant may not dispute his landlord's title; that is, he may not assert rights against it. The rule which prevents him disputing his landlord's title in a suit between them being a rule of expediency, and based solely on the doctrine of estoppel, obviously, when the dispute is not between them, can not apply to prevent the truth appearing. Estoppel applies to the assertion of rights, not to the introduction of testimony. Certain kinds of testimony are excluded, on account of the policy of the law. A man may not testify as to his transactions with a dead man. That is not estoppel. It is legislative policy. On the other hand, a man may estop himself to make a claim of right. In such case his evidence

of facts showing his right may be excluded, because such facts are irrelevant. There is nothing to which they apply, for he is estopped to make the claim. He is estopped to make the claim, not to give the testimony. But if the testimony be relevant to the claim of another, it may be given. The stranger is not estopped to make his claim, and therefore may produce all testimony relevant thereto. Even a solemn judgment estops the parties and their privies only as to matters between themselves. As to strangers, they may plead the truth and prove it. And if a judgment will not estop a man to testify in a contest with one not a party thereto, can such estoppel be worked by the mere signing of a paper? Assuredly not. Though a man have given sworn testimony to a falsehood, that shall not estop him to declare the truth, where the rights of another are involved. We see no reason why, in such a case as this, as between the two claimants of the land, the facts as they exist may not be made to appear; and we are cited to no authority which so holds.

We are of opinion that no substantial error has been shown to the prejudice of appellants' rights, and the judgment is affirmed.

Chief Justice Guffy and Judge Paynter dissent.

Whole court sitting.

Response by Judge DuRelle to petition for rehearing:

By petition for rehearing counsel for appellants vigorously attack the statement of the opinion that it is the doctrine of estoppel which prevents a tenant disputing his landlord's title, and attempt to base their claim that the testimony should have been excluded upon the theory that the relationship of landlord and tenant "is a status fixed by the law. This condition or status can not be altered, changed,

or be other than the law fixes it,—just like the status of husband and wife. In no case would the husband be permitted to deny the relationship to his wife when he admitted the facts showing him to have been legally married. No state of case could arise where a person who had legally and duly executed a deed would be permitted to deny he conveyed the land embraced therein. The reason of this is not estoppel." As to this it may be said that one of the questions in this case was as to the existence of the relationship of landlord and tenant between the appellants and certain persons who were living on tracts of land within the boundary claimed by appellants, but the title to which was not in controversy here. Cardwell, one of the appellants, who obtained the execution of the leases, himself testified that all the lessees claimed the land on which they were living as their own, until after he took the leases, and none of them, except one, had ever paid any rent. Watts, another witness for appellants, testifies that the so-called lessees claimed the land as their own. Delaney Deaton, another witness for appellants, on cross-examination testified to the same effect. Several of the witnesses testified that, being unable to read, they signed the leases without understanding what they were, and without understanding that the signing would have effect to deprive them of any rights in the land. These facts they could have proved in suits by the supposed landlord upon the leases for the rent. No man is estopped by his signature to show that it was obtained by fraud. It is unnecessary to discuss this view of the question. That the general rule, which, in the language of Lord Denman, "precludes the tenant from disputing the title of his landlord," grows out of the doctrine of estoppel, is shown by the very authorities which counsel cite. In Jones on Evidence (section 286), it is

said: "The estoppel arises not only against the tenant, but against all holding under him, or in privity with him, and in favor of all persons claiming under the lessor." So, in Wharton on Evidence (section 1149), the rule referred to is discussed as an estoppel. In each of the adjudged cases cited in the petition the question was as to the admissibility of declarations made by tenants in possession of the land in dispute as to the title under which they held. The cases cited are: Ingram v. Little, 58 Am. Dec., 549; Stacy v. Bostwick, 48 Vt., 192; Warren v. Frederichs, 76 Tex., 651, 13 S. W., 643; Mooring v. McBride, 62 Tex., 311; Sheaffer v. Eakman, 56 Pa., 152. We have not time to go into a discussion of the law relating to the admissibility of declarations, nor to consider the reasons which in these cases were held sufficient to render the various declarations admissible or inadmissible. For example, in the Georgia case, in 58 Am. Dec., 549, the declarations of a tenant at one time that he had no title, and at a later date that he held as tenant under the defendant in error, were both held admissible; and this was all that this case decided on the subject of admission. In the case at bar the lands held by the various persons who were shown to have claimed them in their own right were not in controversy at all. Admittedly, and by appellants' own evidence, they claimed these lands in their own right until the date of the leases. Clearly, evidence of their possession and claim of right up to that date was admissible as a circumstance showing appellants were not in possession of the whole body of land, which included the land in controversy. The appellants obtained leases from these people, and this fact was admissible as tending to support their claim. There is no question here of the right of a tenant to dispute his landlord's title, to obtain title by adverse possession against his landlord,

or as to the admissibility of declarations by the tenant to deprive his landlord of title to land the possession of which he obtained as tenant. It is simply a question whether appellee should be precluded from showing the actual facts relevant to the controversy in which he is engaged because of the signing of certain papers in relation to land which is not in controversy in this suit. We do not think the rule as to declarations by tenants can be thus applied, and we are cited to no authority which so holds.

The petition is overruled.