McKiNNEy, J.,
delivered the opinion of the court.
This was an action of ejectment in the circuit court of Dyer. The ground of defense relied upon, and on which the action failed, was chaTWperty. The case as presented in the record, is this :
In the early part of the year, 1849, Henry W. Connor, (who from the recitals of some of the title papers in the record, purports to have been a resident of the city of Charleston, South Carolina,) through his attorney in fact, bargained, and covenanted to convey to Josiah G-arrett, a tract of land of about one hundred and ten acres, situ *643 ate in Dyer county. A bond for title was executed, and delivered to Mm at the time of the contract. In July of the same year, a verbal contract was entered into between Garrett and the defendant, "Williford, by wMch the former agreed to sell and convey to the latter, twenty-nine and a half acres of the above mentioned tract, purchased from Conner. A survey was made, and the boundary marked, of said twenty-nine and a half acres of land, and shortly afterwards Williford settled thereon, and has continued to reside there ever since. After-wards, Garrett sold his interest in the entire tract of one hundred and ten acres to McCoy, the lessor of the plaintiff, and assigned to him Conner’s bond for title; and thereupon, Conner, by his attorney, in fact, executed to McCoy a deed for said tract of land, pursuant to the terms of the title-bond. To recover the twenty-nine and a half acres this action was brought.
Upon this state of facts, the circuit judge instructed the jury, that, if, at the time of the sale and assignment of the title-bond by Garrett to McCoy, Williford was in possession of the land, claiming it as his own, the sale would be void, and the deed from Conner would likewise be void.
It seems to us, that the champerty act of 1821, has no application to this case. First, assuming the fact of Conner’s non-residence to be established, the case is directly within the terms of the second proviso of the first section of the act, which declares, “that nothing herein contained shall be so construed as to prevent any non-resident of this state from selling and conveying any lands .in this State, which said non-resident may own, of which lands no person may, at the time of such sale, hold adverse possession by deed, devise, or inheritance.”
*644 At the time of the sale and execution, of the title-bond by Conner to Garrett, there was no adverse possession of the land sold; and the subsequent possession of part, thereof, by Williford, supposing it to have been adverse, being a mere naked possession toithout title, interposed no obstacle to the conveyance from Conner to McCoy. This is necessarily so by force of the terms of the proviso. But, secondly, without reference to the proviso, or to the fact that Connor is a non-resident, it is clear, in another view of the case, that champerty cannot be predicated of the conveyance from Conner to McCoy. It is settled, that a contract for the sale and conveyance of land, entered into Iona fide, at a time when no adverse possession existed, may be consummated by the execution of a deed of conveyance after an adverse possession has commenced; I Yerg., 384, 398. The contract by which the purchaser became vested'with an equitable title, being lawful and valid in its creation, its completion is not within the meaning of the prohibition of the champerty act, notwithstanding an intermediate adverse possession.
But it is argued, that as McCoy’s interest was in fact acquired by his purchase from Garrett of the equitable title, after the adverse possession of Williford commenced, that the contract bet/ween them is within both the letter and spirit of the champerty act; and that the contract and transfer of the equitable title being void, it results, as a legal consequence, that the conveyance of the legal title by -Conner to McCoy, is wholly inoperative; that, in legal effect, the transaction is the same as if Conner had conveyed to Garrett, and he to McCoy. To this reasoning, however plausible, we cannot yield our assent. It does not seem to us that sound policy requires the champerty act to be extended upon doubtful con *645 struction. It bas always been held in tbis State that a title-bond may be transferred.- Tlie assignee is placed in tlie stead, and substituted to all tbe rights of tbe assignor; and, consequently, bas tbe' same right to demand the legal title from tbe vendor, in fulfilment of tbe terms of bis bond. Tbis being so, we bold that, as a conveyance from Conner to Garrett would have been free from all exception on tbe score of champerty, the conveyance in question from him to McCoy, is equally unexceptionable upon tbis ground. And we are not prepared to say that, upon a proper construction of the statute, it is competent to look beyond the legal title; at all events, we feel clear that it is not competent to do so in a court of law, on the trial of an action of ejectment.
The judgment will be reversed.