Stacy, Admx. *v.* Bostwick et al.

STACY, ADMINISTRATRIX, *v.* OSCAR F. BOSTWICK AND M. D. L. THOMPSON.

*Evidence.    Ejectment:    Deed.    Adverse Possession.*

Declarations by a tenant, made in conversation with members of his family, and not in presence of the landlord, and which do not come to the landlord's knowledge, that he is holding the premises adversely to the landlord, cannot affect the landlord's title, nor change the tenant's relation to him.   No prescriptive right will begin to accrue to a tenant, until he has repudiated his tenancy, and given notice thereof to the landlord.

Defendant in ejectment cannot defeat plaintiff's right acquired by a prior peaceable possession, especially when such possession has ripened into a perfect title, by showing an outstanding title in another with which he does not connect himself.

It is well settled in this state, that when a trust relation subsists between the parties, a conveyance by either that merges the legal and equitable estates, is not within the statute making deeds, &c., of no effect as against the adverse claimant, if at the time of the delivery thereof the land is in the actual adverse possession of any person claiming the same adversely to the grantor.

EJECTMENT.   Plea, the general issue, and trial by referee, who reported as follows :

The land in question comprises about a quarter of an acre, and is so much of five-acre lot No. 96 as lies on the west side of North Avenue in the city of Burlington.  The plaintiff put in evidence the records of a series of deeds covering the land in dispute, commencing with one from E. T. Englesby to the United States, dated August 24, 1812, and forming a chain of title down to Nathan B. Haswell, in whom the title to the entire lot vested by deed from Heman Allen to him, dated April 22, 1844, he having from March 13, 1832, been a tenant in common of the land, by virtue of said deeds, with Heman Allen and others.

The plaintiff also introduced a certified copy of a quit-claim deed of the land in question from John Thompson, who was not in the chain of title above mentioned, to Henry B. Stacy, the plaintiff's intestate, executed Oct. 10, 1845.   This deed contained,

after a description of the land, the following language : " Being land which I have occupied without let or hindrance for the past eighteen years." But no evidence was offered in proof of the truth of this statement, and for want of such evidence, the referee is unable to find, and does not find, that it is true.

The plaintiff also proved, and the referee finds, that at the March Term, 1846, of the Chittenden County Court, an action of ejectment for this land was brought by Nathan B. Haswell against the plaintiff's intestate, in which a jury trial was had at the October Term, 1846, which resulted in a verdict for the defendant; that the cause was at that term reviewed by the plaintiff Haswell, and continued till the September Term, 1847, when the plaintiff was nonsuited; but no evidence was given as to the specific ground of defence made by the defendant in the trial, which resulted in the above-mentioned verdict.

The plaintiff also put in evidence a certified copy of the record in the town clerk's office in Burlington, of a levy of an execution in favor of Charles L. Nelson against Henry B. Stacy, made September 17, 1862, and embracing the land in question; also, a deed of the same land from said Nelson to said Stacy, dated April 27, 1869 ; and the plaintiff admitted that at the time of the execution and delivery of this deed, the defendants were in adverse possession of the premises. No evidence was offered to impeach the genuineness of any of the deeds or other records or copies of record offered by the plaintiff, and the referee finds that such deeds were duly executed and delivered, and the execution duly levied, and the officer's return of the levy duly recorded.

From the foregoing evidence the referee finds that at the commencement of this action and at the hearing before the referee, the elder and better paper title to the land in question was, and still is, in the heirs of Nathan B. Haswell, and not in the plaintiff, nor the heirs of Henry B. Stacy. But the referee also finds from all the evidence in the case, that the possession of the land by Henry B. Stacy, Anson Bostwick, and the defendants, from 1845 to the time of trial before the referee as hereinafter described, was adverse to the claims and rights of Haswell and his heirs.

The referee further finds, that the judgment of Nelson against Stacy was obtained, and the levy of the execution thereon was made, in pursuance of an agreement between Nelson and Torrey E. Wales ; that this agreement was made by Wales solely in the interest and for the benefit of Stacy, and at Stacy's request, and the latter's interest in the matter was known to Nelson at the time, and it was understood between all three of them, that if any money was to be paid to Nelson under that agreement, it was to

be furnished by Stacy. Within a few months after the levy, Stacy sent Wales $100 to be paid to Nelson under this agreement, and on the 29th of January, 1863, Wales paid it to Nelson and received from him a receipt therefor; and the deed made by Nelson to Stacy April 27, 1869, above referred to, was to carry out Nelson's above-mentioned agreement.

At the date of John Thompson's deed to Stacy, October 10, 1845, Thompson was in possession of the land; and from that time forward Stacy continued in the personal occupancy of the land until the spring of 1848, when he verbally leased it to Anson Bostwick at a small rent, and thereupon, by Stacy's express consent, and as his tenant, Bostwick entered into the possession of the land, and for every season thereafter, with the exception of those of 1861 and 1862, occupied it until his death, which occurred in April, 1865. This occupation consisted in cultivating the ground and enclosing the land with a fence, which, as it used to be stolen during almost every winter, he was obliged to repair in the spring. As late as 1854, Anson Bostwick admitted to one of the witnesses that Stacy owned the land, and that he had hired it of him.

It did not appear, and the referee does not find, that Bostwick ever paid Stacy any rent, notwithstanding he had agreed to do so, or that Stacy ever asked him for any; but the referee does not find that Bostwick ever claimed to Stacy, or in any way that came to Stacy's knowledge, that Stacy did not own the land, or that he did. The defendants offered to show that Bostwick, in conversation with members of his family, but not in Stacy's presence, nor in any way that ever came to Stacy's knowledge, during his possession of the land, declared that he held it adversely to Stacy; but the referee rejected the testimony.

The land was entirely uncultivated in the year 1862, and Bostwick did no ostensible act of possession or occupancy thereof during that year, and the fences were not repaired as usual, but the land was entirely vacant, and lay open as a common, together with the adjacent land. Neither is the referee able from the testimony to find that Bostwick exercised any acts of ownership or possession of the land in the year 1861, nor, positively, that he did not.

After Anson Bostwick's death, the defendants (Oscar F. Bostwick being his son, and Thompson his son-in-law), claiming that the land belonged to Anson Bostwick at the time of his decease, by virtue of fifteen years adverse possession on his part, continued in possession thereof down to the commencement of this suit, Sept. 11, 1872, as the property, and in behalf, of Anson Bost-

wick's heirs ; and their possession under that claim and in that relation, has continued ever since ; but in one of the years between 1865 and 1872—the referee cannot find what particular year it was—no dominion was exercised by them over the lot, except the cutting and removing of a small quantity of turf therefrom by the husband of one of Anson Bostwick's daughters, by their authority and consent.

It did not appear to whom previous to 1861 the land was assessed, nor whether it was assessed to any one, nor whether any one paid the taxes thereon. In 1861, at the request of Henry B. Stacy, who was about to go to Russia, where he remained until 1868, Carolus Noyes, who had the charge and trust of the land adjoining this piece on all sides but the highway, had the land in question assessed to himself, and paid the taxes thereon for Stacy's benefit till 1870, when the defendant Thompson requested the assessors to place the land in his list, which they accordingly did, and he has ever since paid the taxes thereon.

In 1867, Wales, who was then acting as Stacy's agent in respect to this land, the latter being then in Russia, learned from the wife of defendant Thompson that the heirs of Anson Bostwick claimed that he had previous to his death obtained title to the land by adverse possession, and that the heirs then held it under that claim ; and the referee does not find that previous to this time, Stacy, or any one acting for him, had learned that Anson Bostwick's possession was claimed to be adverse to Stacy's rights. Stacy died in the spring of 1869, and the plaintiff was duly appointed his administratrix, and is still acting in that capacity.

The defendants introduced no evidence bearing upon the paper or record title of the land, but confined themselves entirely to testimony, which, they claimed, tended to show adverse possession on the part of Anson Bostwick, and the defendants as his heirs, for more than fifteen years previous to the commencement of this action.

If, upon the foregoing facts, as matter of law, the superiority of the paper title of Haswell's heirs over that of the plaintiff, is not overcome and defeated to the aid of the plaintiff by the fact that Stacy's possession and Anson Bostwick's possession, initiated, continued, and interrupted as above stated, and the possession of the defendants, were all adverse to Haswell and his heirs, and in addition thereto, if in view of the manner in which Anson Bostwick's possession commenced and continued, the defendants are entitled to dispute the title of Stacy, the inferiority of which to that of Haswell's heirs, if proved at all, was proved by the evidence introduced by the plaintiff herself, then the referee decides

that the defendants are entitled to recover their costs. So also, if, as matter of law, the plaintiff is not entitled to rely upon the deed from Nelson to Stacy in establishing her title, for the reason that at the time of its execution and delivery the defendants were in adverse possession of the land, then the referee decides that the defendants are entitled to recover their costs. And these questions of law the referee refers to the court. But in all other aspects of the case, the referee is of opinion that the plaintiff should recover, not only the seisin and peaceable possession of the land in question, but also the mesne profits thereof, which he finds to be $11.16, and her costs.

The court, at the September Term, 1875, PIERPOINT, Ch. J., presiding, decided that the declarations of said Anson Bostwick, that he held the demanded premises adversely to Stacy, were properly excluded by the referee, and rendered judgment on the report, *pro forma*, for the plaintiff; to which the defendants excepted.

*Henry Ballard*, for the defendants.

The declarations of Anson Bostwick as to the manner in which he occupied this land, were improperly excluded. They were made while he was in possession and occupation of the land, and were against his own interest, or certainly they had no tendency in his favor. By his possession and occupation of this land, he was at law presumptively the owner of it, and a declaration that he occupied it adversely to Stacy, was equivalent to saying that Stacy was the owner of it, and that he had no title to it at all.

Declarations by a party in possession of real estate, against interest, tending to cut down or limit one's title to the same, are always admissible in evidence. This is a well-settled rule of evidence. 1 Phil. Ev. 305; *Doe* d. *Human* v. *Pettett*, 5 B. & A. 223; *Peaceable* v. *Watson*, 4 Taunt. 16. It has been held in some cases that the declarations of a party while in possession are admissible, even though not made against the interest of the party at all. 1 Phil. Ev. 295; *Baker* v. *Ray*, 2 Russ. 67.

Upon the facts found in the report, judgment should be rendered for the defendants. From all the facts, it appears that neither Stacy nor his heirs had any record title to the land in

question, nor any title by adverse possession.  It is a settled rule of law in actions of ejectment, that the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of the title of the defendants.  Adams Eject. 32 ; Broome's Legal Max. 455, note ; *Lane* v. *Reynard*, 2 S. & R. 64.  And if a defendant in possession can answer the case that is made out by the plaintiff, by showing a better title to the property in some third party, it will be a sufficient defence.  Adams Eject. 32 ; 1 Swift Dig. 509.

The record title of Haswell is in all respects perfect and complete.  In fact, it is found that the heirs of Stacy have no record title of value at all, as the quitclaim deed from Thompson to Stacy in 1845 is worthless, as it is not found that Thompson had any title at all at the time of the giving of that deed.  And at the time of the deed from Nelson to Stacy in 1869, the defendants were in adverse possession of the lands ; hence that deed conveyed no title.  Gen. Sts. c. 65, s. 26 ; 21 Vt. 472.

It further appears that all the evidence of this record title in the heirs of Haswell, was introduced by the plaintiff herself.  Such a state of facts being proved by the plaintiff, the plaintiff, whose only claim of title is by virtue of an adverse possession, is not entitled to recover against the defendants who are in actual possession.  The defendants are not estopped from taking advantage of the fact of this record title outstanding in a third party under such circumstances.  *White* v. *Wheaton*, 16 Conn. 565.

Again, the referee has found, not only that Stacy's heirs had no record title to the land in question, but he has not found that they had any title to it by adverse possession.  The rule of law is, that when a plaintiff in ejectment claims title to the land by adverse possession, it is for the plaintiff to prove—not leave it to be inferred—that he has been in possession of the land for a period of full fifteen years, and that this possession has been of such a character in all necessary respects as to be an adverse possession.

In brief, to entitle a plaintiff in ejectment to recover upon the strength of a title by adverse possession, it is to be found as a fact affirmatively in favor of the plaintiff, that he has a legal title

by adverse possession.  *Hapgood* v. *Burt*, 4 Vt. 155.    Such fact is not found in this report.

*Wales & Taft*, for the plaintiff.

The possession of Thompson had undoubtedly ripened into a perfect title, as the paper title referred to in the report showed the land in Haswell, and the ejectment suit terminated adversely to him.    A recovery can be had by the plaintiff in this case (unless the defendants succeed in proving title by adverse possession), upon the authority of the case of *Perkins* v. *Blood*, 36 Vt. 273 ; as the defendants cannot set up title in Haswell or his heirs against a prior actual possession not apparently wrongful, as they do not connect themselves with the Haswell title.    *Russell* v. *Brooks*, 27 Vt. 640 ; *Perry* v. *Whipple*, 38 Vt. 278 ; Tyler Eject. 85.    The plaintiff's intestate acquired a perfect title to the premises in question by his deed from Thompson, and a continuous adverse possession by himself and tenant until the year 1861. *Hodges* v. *Eddy*, 41 Vt. 485.    And acquired "all the title of the true owner (Haswell), precisely as if he had a deed from him." *Hughes* v. *Graves*, 39 Vt. 359.    A tenant cannot dispute the title of his landlord.    *Greeno* v. *Munson & Munson*, 9 Vt. 37 ; *Tuttle* v. *Reynolds*, 1 Vt. 80 ; *Lord* v. *Bigelow*, 8 Vt. 445 ; Tyler Eject. 874.    The referee finds that Stacy, being in possession of the land under the deed from Thompson, leased it to Anson Bostwick, under whom the defendants claim.    Bostwick's occupation, therefore, commenced in a tenancy, and until he gave distinct notice to Stacy that he would no longer hold under him, he could not hold adversely to Stacy or his heirs.    No such notice is found by the referee to have been given until the year 1867, and the presumption is that the tenancy existed until that time.    *Abbott* v. *Pratt*, 16 Vt. 626 ; *Pierce* v. *Brown*, 24 Vt. 165 ; *Ripley* v. *Yale*, 18 Vt. 220 ; *Sherman* v. *The Champlain Tr. Co*. 31 Vt. 162 ; *Hall* v. *Dewey*, 10 Vt. 593 ; *Admr. of North* v. *Barnum*, 10 Vt. 220 ; *Blake* v. *Howe*, 1 Aik. 306.    Where the vendee of land who failed to complete the purchase so as to be entitled to a deed, set up a claim of title in himself—held, it could not affect the vendor until notice was brought home to him.    *Robinson* v. *Sherwin*, 36 Vt. 69 ; Tyler Eject. 146, 918.

The deed from Nelson to Stacy was valid notwithstanding the adverse possession of the defendants, as he held the land in trust for Stacy. *Farnsworth* v. *Converse*, 1 D. Chip. 139; *Mitchell* v. *Stevens*, 1 Aik. 16; *Aldis* v. *Burdick*, 8 Vt. 21; *Appleton* v. *Edson*, 8 Vt. 239; *Converse* v. *Searls*, 10 Vt. 578.

The books fully recognize the doctrine that adverse possession must be continuous, and the case shows that no one occupied the land in question in 1861; therefore the defendants fail in their claim of adverse possession.

The tenancy of Bostwick having been shown, and he and his heirs being estopped from denying his landlord's title until notice to Stacy, the referee properly excluded his declarations of adverse holding.

The opinion of the court was delivered by

REDFIELD, J. This action is ejectment, and founded on the facts stated in the referee's report. The plaintiff's intestate received a deed of the land from John Thompson, Oct. 10, 1845, and personally occupied the land until the year 1848, and then leased it by parol to Anson Bostwick, who occupied it as *tenant* until he died, in 1865. During the years 1861 and 1862, the referee is unable to find that the said Bostwick did any ostensible act upon the premises. But from 1845 until 1861, the report distinctly states that Stacy, by himself and his tenant Bostwick, was in continuous possession, claiming title, which is a period of more than fifteen years. This continued, adverse possession, claiming the title, of Stacy, for fifteen years and more, vested in him a perfect title as against Haswell and all the world.

II. The secret declaration of Bostwick, privately, in his own family, that he was in possession in his own right, and adverse to Stacy, could not affect Stacy's title, nor change his relation to Stacy. Being the tenant of Stacy, he continues such until he surrenders his possession to his landlord. And no prescriptive right could begin to accrue to him, until he had repudiated his tenancy, and given distinct notice of the same to his landlord. This testimony was properly rejected.

III. The defendants cannot defeat the plaintiff's right, acquired by a prior peaceable possession, especially when that possession has ripened into a perfect title, by the attempt to show an outstanding record title in the heirs of Haswell. *Perkins, admr.* v. *Blood,* 36 Vt. 273, and cases there cited. The defendants in no way connect themselves with Haswell's title, but claim title by possession adverse to all the world.

IV. It is claimed that Nelson, by his levy and set-off, divested Stacy of all title, and that the reconveyance by Nelson to Stacy of the title thus acquired, was void, because those under whom defendants claim were in adverse possession at the time of such conveyance. The case finds that Nelson was employed by Stacy to procure a judgment in his favor against Stacy, and set off this land on execution *for the benefit of Stacy.* It is not obvious how a levy of execution by Nelson, and reconveyance of such title to Stacy, could benefit Stacy, or strengthen his title. It would seem, *in form,* a proceeding *in invitum* by a creditor of Stacy to collect a debt, but in *fact* a mere *form* and *farce;* and as against a creditor of Stacy, it would doubtless be void. Whether it could have any force as between the parties, we have no occasion to determine. It is well settled in this State, that when a trust relation subsists between the parties, a conveyance by either that shall merge the legal and equitable estates, is not within the statute of 1807. That statute was enacted to carry out a principle of the common law which forbid the traffic and speculation in matters of dispute and litigation ; and this cut up by the roots the *business of breeding lawsuits.* And it has ever been held that the surrender of a trust, or a conveyance that merely merged the equitable and legal estates—what a court of equity would compel— was not within the mischief which that statute was intended to prevent. *Mitchell* v. *Stevens,* 1 Aik. 21 ; *Aldis, exr.* v. *Burdick,* 8 Vt. 21 ; *Appleton* v. *Edson,* 8 Vt. 239.

Judgment affirmed. .