## WARNER v. WICKIZER et al.

No. 7841—Opinion Filed Oct. 31, 1916.

(160 Pac. 885.)

1. **Champerty and Maintenance—Conveyance of Lands Held Adversely—Statutory Provisions.**

Section 2260 of Rev. Laws 1910, which prohibits the buying or selling of pretended titles to land adversely held but not in suit, does not prohibit all conveyances as against an adverse possessor, but only such conveyances as are based upon the inhibited contracts. The law does not prohibit the exercise of an authority which it authorizes; and this section of the statute does not prohibit a conveyance which equity would compel, or which is made in compliance with statutory authority or duty.

2. **Same.**

Where a corporation was organized in the Indian Territory prior to statehood, having as the object of its existence the dealing and trading in real estate, and where a continuance of the exercise of the functions for which such corporation was created is in violation of the express provisions of the Constitution and statutes of the state, and the indefinitely continued ownership of real property by such corporation is contrary to the policy of the Constitution and laws of the state, it is in accord with the policy of the Constitution and law that such corporation seek voluntary dissolution and dispose of its lands; and where such a corporation, in bona fide compliance with such policies of law, in actual contemplation of such dissolution and as a step in the actual process of dissolution, which occurs within a reasonable time, divides its assets among its stock-

holders, and in effecting such division of its assets executes to one of its stockholders a conveyance of land owned by it, which land is adversely held by a third person, such conveyance, being necessary to effect such dissolution and division of assets, is authorized by law, and is not void as to such adverse possessor of the lands conveyed; it being clear that such dissolution is had in good faith, and that the conveyance is a mere incident to and not the object of it.

3. **Same—Champertous Deed—Sufficiency of Evidence.**

Evidence examined, and held, that deed is not void as being champertous.

(Syllabus by Johnson, C.)

Error from District Court, Tulsa County; Conn Linn, Judge.

Action by E. S. Warner against Margaret C. Wickizer and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Haskell B. Talley, for plaintiff in error.

Davidson & Williams, for defendants in error.

Opinion by JOHNSON, C. This was an action in ejectment, filed in the superior court of Tulsa county by E. S. Warner, plaintiff in error, as plaintiff, against Margaret C. Wickizer and others, defendants in error, as defendants, for the recovery of 160 acres of land, rents and profits.

The land was allotted to the heirs of Tecumseh Tiger, deceased Creek Indian citizen. It was admitted by the parties that Albert Tiger was the sole heir of Tecumseh Tiger, deceased, and was assumed by the parties that, at the time of the conveyance by Albert Tiger, hereinafter mentioned, the latter was not restricted in reference to the alienation of such lands. In the trial, by his evidence plaintiff deraigned his title through (1) a deed executed on December 27, 1904, by Albert Tiger to the Iowa Land & Trust Company, a corporation organized and existing under the laws of the Indian Territory, and (2) a deed executed on January 10, 1911, by the Iowa Land & Trust Company to plaintiff. The evidence of plaintiff disclosed that, prior to statehood, the Iowa Land & Trust Company was engaged in the business of buying and selling lands; that after the induction of the laws of the state of Oklahoma prohibiting a corporation from engaging in the business of buying and selling of lands, and requiring that all corporations dispose of all lands owned by them not necessary and proper in carrying on the business for which they are licensed, the corporation, for the purpose of complying with the law, aban-

doned its former business of buying and selling lands, and proceeded to dispose of all lands held by it, including the lands in controversy, and then to seek a voluntary dissolution. The evidence further showed that, at the time of the conveyance of the Iowa Land & Trust Company to plaintiff, plaintiff was the owner of all of the corporate stock of the company, with the exception of two shares, which were held by two other persons for the purpose of keeping alive the official life and directorate of the corporation until its affairs could be liquidated and a dissolution accomplished; that this deed was made to plaintiff, without any present consideration, as one of the steps in accomplishing a division of the assets of the corporation, so as to comply with the state laws requiring a disposition of corporate realty, and in winding up the affairs of and dissolving the corporation. Within a short time after the execution of the deed, a petition for the voluntary dissolution of the corporation was filed in the superior court of Muskogee county; and, on May 23, 1911, that court entered a decree declaring the dissolution of the Iowa Land & Trust Company as a body corporate.

This action was one in ejectment, and the evidence of plaintiff established that, at the time of the execution of the deed by the Iowa Land & Trust Company to plaintiff, and for a number of years prior thereto, the defendants had been in the adverse possession of the land involved in the action.

At the close of the testimony of plaintiff, the defendants interposed a demurrer to the evidence, which was sustained by the court, upon the ground that the deed from the Iowa Land & Trust Company to plaintiff was void as to the defendants by reason of the adverse possession of the land by defendants at the time of its execution, and of the fact that the grantor had not been in possession of the land, or the reversion and remainder therein, or taken the rents and profits therefrom for the space of a year. After adverse action upon his motion for a new trial, plaintiff has brought the case to this court on appeal.

Plaintiff in error contends: (1) That at the time of the execution of the deed from the corporation to himself he was the sole owner of the stock of the corporate grantor, and thus the sole owner of its assets, and that therefore the conveyance to himself, in contemplation of dissolution of the corporation and to comply with the laws of the state, was the performance of a trust created by law, in that it was a delivery to him of the legal estate in reference to which he in reality was already the equitable owner in

his capacity as the owner of the entire corporate stock, and was not in violation of the champerty act; and (2) that the deed was executed and delivered as an act of division among the stockholders of the corporate real assets, with no other consideration, as one of the necessary steps in the actual dissolution of the corporation, the disposal of the realty and the dissolution of the corporation both being a compliance with the inhibitions and requirements of the corporate land ownership laws of the state, and that the validity of the deed therefore was not affected by the adverse possession of defendants.

We cannot lend an ear to the argument of the first contention, for the reason that it is based upon an illegality. While plaintiff testified that he was the owner of the stock of the corporation, and on this statement based the conclusion that he was the owner of its assets, he qualified the testimony that he was the owner of the stock by the statement that two shares of the stock were held by two other persons for the purpose of preserving the legal official life of the corporation. We do not conceive that the law would permit plaintiff in error to claim ownership of the two outstanding shares of the stock, and thus of the entire corporate stock. Under the law, there were two other stockholders of the corporation, and plaintiff in error was not the owner of the entire assets of the corporation by reason of his ownership of all but two shares of the stock. He, therefore, was not the owner of the entire legal estate, as distinguished from the equitable estate, in this land, and therefore cannot claim immunity from champerty under his first contention.

The claim that the validity of the deed was not affected by the adverse possession of the defendants, by reason of the facts that the deed was executed by the corporation as an act of division of the corporate assets among the stockholders, with no other consideration, as one of the necessary steps in the actual liquidation and dissolution of the corporation, in compliance with the corporate land ownership laws of the state, requires consideration of the various laws involved.

The section of our statutes, in force at the time of the origin of the subject-matter of this controversy, and involved here, is section 2260 of the Revised Laws of 1910, which reads as follows:

"**Buying Pretended Titles.** Any person who buys or sells, or in any manner procures, or makes or takes any **promise or covenant to convey** any pretended right or title to any lands or tenements, unless the grantor thereof, or the person making such promise or

covenant has been in possession, or he and those by whom he claims have been in possession of the same, or of the reversion and remainder thereof, or have taken the rents and profits thereof for the space of one year before such grant, conveyance, sale, promise or covenant made, is guilty of a misdemeanor." (Emphasis ours.)

This court has repeatedly held that a conveyance made in violation of, or as the consummation of a violation of, this section, though valid as between the grantor and grantee, is void as to the person in adverse possession of the land conveyed; and this general rule is so well settled, and so well known, that it is not necessary to cite or quote from such decisions. We now have under consideration an asserted exception to the general rule, viz., a theory that the section does not by letter or spirit prohibit all **conveyances** of title to land under the possessory conditions outlined in the statute. In other words, the theory here advanced is, that the statute, in both letter and intent, prohibits only the present actual **buying** or **selling**, procuring, making, or taking of any **promise** or **covenant** to convey; and does not prohibit the actual **grant or conveyance**, except if the grant or conveyance be, in the words of the statute, "such grant or conveyance," as may be based upon a transaction of **present** buying or selling, or procuring, making, or taking a promise or covenant to convey, which transaction itself actually occurs, **at the time of** the adverse possession. For analogy, it is argued in effect that, if the actual landowner, at a time when the adverse possessory circumstance does not exist, and at a time when it would be clear that such contract is not within the sphere of champertous influence, makes to another a sale and agreement to convey his land at a future time; and if, in the interim between the making of the sale and contract to convey and the actual conveyance, adverse possession in still another person should intervene against the owner, in such an event, being a condition under which equity would compel the execution of the deed, and the penalty of damages would attach to the owner for failure so to do, an inhibition of the execution of the deed would work an ex post facto effect not contemplated by the statute.

As still further analogous to these contentions and the above illustration, it is contended. in effect, that, the champerty law, being for the very purpose, in both expression and intent, of prohibiting the willful acquisition of rights of action to the end of a promotion of litigation, it was neither the expression nor intention of the law to relieve or prohibit a compliance with an obligation or authority to convey, created by the law itself, and not the result of the willful or constructive intention of the conveyor to foment litigation.

Upon these premises, plaintiff in error bases his final argument that the Iowa Land & Trust Company was organized in territorial times, had as the purpose of its existence a business contrary to the policy of the Constitution and laws of the state, and was required to dispose of its real estate within a given statutory period; that at the time of the execution of the deed in controversy the corporation was in process of dissolution, in good faith, and in compliance with the policy of the law, which was inimical to the objects of the existence of the corporation; that, in executing the deed, the corporation was but performing the obligations imposed upon it by the law, in dividing its assets among the stockholders in the process of dissolution; and that, by the deed, the corporation also was but performing the strict requirement of the law that it dispose of its real estate within a given time.

It is first necessary to determine whether the section of the statute under consideration was intended to prohibit any and all conveyances of land, as against an adverse possessor; and, if not, then whether the conveyance to plaintiff comes within any exception.

In this connection, it will be noted that section 2259, Rev. Laws, prohibiting the buying of lands already involved in pending litigation, **expressly** prohibits the taking of **any conveyance** of lands from persons not in possession, while such lands are in suit. by a person knowing of the pendency of the suit and such lack of possession in his grantor; while section 2260, brought into being at the same time by the same legislative power, as a part of the same legislative act, dealing with transfers of property adversely held without regard to pendency of suit. and corollary to the first section. does not embody the general inhibition against **any conveyance**, but only against "such grant, conveyance," etc., as are based upon the **buying or selling, procuring, or taking of promise or covenant to convey, transacted during the time of the existence of the prescribed adverse holding**. This difference in use of words is not meaningless, and evidently was deliberate.

The conditions which gave rise to both sections were the same. In almost every community are litigiously inclined persons. who thrive in contention, who, unrestrained, for personal gain, spite, or fondness for quarrel. would be prone, not alone to litigation of

their own, but to purchase and engage in the dormant causes of action and disputes of others. Both of these sections came into existence to allay the social unrest consequent upon such activities, as a blow at litigiousness, and not for the purpose of striking down rights. The one section, prohibiting the buying of titles in suit, contemplated that the courts having already assumed jurisdiction, **no** conveyance should be made, for the reason that, if there were outstanding rights, either resulting from operation of law or otherwise, acquired at a time when they could be legally so acquired, all that was necessary was for the holder of such rights to come into the litigation pending and obtain an adjudication of his claims, and he would be compelled to this course. The other section evidently contemplated that, if a person may have already acquired rights, at a time when litigious intent in the acquisition was not imputed, or if he should acquire rights by operation of law, in such manner that no litigious intention might be imputed, without the inhibited intent he already would be involved in the possibility of the litigation, and that the full maturity of his rights not alone would not meet with disfavor in the law, but would be favored, both for the reason that the law favors a vested right, and the further reason that the elimination of his obligor restricts rather than broadens the limits of controversy. The evident intentions of the sections force the conclusion that the first section deliberately was intended to be so worded as not to tend to abrogate substantial non-champertous rights, and did not prohibit all conveyances.

Ruling Case Law lays down the rule as follows:

"The adverse possession must exist at the time of the conveyance, in order to avoid it; but there are cases in which lands may be held adversely and still the conveyance will be valid. It seems that a conveyance made in the performance of a duty or of an obligation is not within the statute. It is on this principle that a conveyance of land in pursuance of a person's contract of sale, or a previous bond for title, or parol gift, is not within the statute, if the contract, bond, or gift was made at a time when the lands were not held adversely." 5 Ruling Case Law, 280.

"Conveyances made at judicial and official sales or under decree of court of lands adversely held by third parties are not champertous either at common law or under the statutes. * * * A deed to land in the adverse possession of a third person is not invalid if executed in performance of a lawful contract entered into when the land was not

so held. Similarly a deed is not invalid, if executed to correct mistakes in a conveyance made before the commencement of the adverse possession. * * * When a trust relation subsists between the parties, a conveyance by either that merges the legal and equitable estates is valid, though the land is in the actual adverse possession of a third person. * * * Devises are not within the rule against conveying pretended titles." 6 Cyc. 874, 876, 877, and 878.

Each of the above works cites an extensive list of authorities in support of the doctrine they announce. In the decisions cited there seems to be little or no conflict, except that the exception was not adhered to by some of the courts in cases of sales on execution, where the creation of the debt and the consequent judgment and execution sale might have been construed as willfully brought about or permitted by the debtor for the purpose of subverting the intent of the statute on champerty.

The Supreme Court of Vermont, in referring to a statute similar to ours, said:

"That statute was enacted to carry out a principle of the common law which forbids the traffic and speculation in matters of dispute and litigation; and this cut up by the roots the business of breeding lawsuits. And it has ever been held that the surrender of a trust, or a conveyance that merely merged the equitable and legal estates—what a court of equity would compel—was not within the mischief which that statute was intended to prevent." Stacy v. Bostwick, 48 Vt. 192.

The Supreme Court of Connecticut, in a similar case, said:

"A conveyance made by a trustee to the party holding the equitable title is not a sale of a pretended title. A release of the title by a mortgagee, * * * after the satisfaction of the mortgage, is not within the statute. * * * Here the bank held the legal title under the mortgage, while Alfred Todd, having as surety paid the mortgage debt, had been subrogated to the beneficial interest held by the bank, and was now the equitable owner. A conveyance to him by the bank of the bare legal title in these circumstances could not be affected by the adverse possession of the defendants. A full title therefore passed to Alfred Todd by the deed of the receivers." Townsend Sav. Bank v. Todd, 47 Conn. 190.

The Supreme Court of Kentucky, in treating of the validity of a sheriff's deed, the execution defendant being out of possession after the sale and at the time of the execution of the deed, said:

"The contention of the appellees that said parcels of land were held by them adversely to the appellants at the time they received

the conveyances from the sheriff is not an available defense. There was no adverse holding of said parcels of land at the time the sheriff sold them, and it is well settled that the law of champerty does not apply to deeds made to carry into effect a contract for the sale of land of which there was no adverse possession at the time the contract was entered into, although the land be held adversely when the deed is made." Greer v. Wintersmith, 85 Ky. 516, 4 S. W. 232, 7 Am. St. Rep. 613.

Other cases supporting the rule that conveyances by grantors under legal or equitable obligations, or in pursuance of legal or equitable duty to execute the conveyance, are found in the authorities quoted from, and additional cases are as follows: West v. Drawhorn, 20 Ga. 170, 65 Am. Dec. 614; Norton v. Sanders, 31 Ky. (1 Dana) 14; Harral v. Leverty, 50 Conn. 46, 47 Am. Rep. 608; Varick v. Jackson, 2 Wend. (N. Y.) 166, 19 Am. Dec. 571; Tuttle v. Jackson, 6 Wend. (N. Y.) 213, 21 Am. Dec. 306; Mitchell v. Stevens, 1 Aikens (Vt.) 16; Appleton v. Edson, 8 Vt. 239; McCoy v. Williford, 32 Tenn. (2 Swan) 642; Sims v. Cross, 18 Tenn. (10 Yerg.) 460; Humes v. Bernstein, 72 Ala. 546.

None of the cases found deals with a state of facts identical with the facts in this case; but the rule to be drawn from the cases is applicable. Running through the great body of judicial interpretation of similar statutes seems to be the rule that such statutes are not intended to bar conveyances by grantors under legal or equitable duty or obligation to convey, where such duty or obligation arises prior to the adverse possession of the third party, or where it arises afterwards from operation of law, and clearly not from the purpose of the parties to that end. It is clearly not the intent of the law to prohibit obedience to its own mandates.

We do not lose sight of, and the other courts in construing this law have not ignored, the principle of livery of seisin, but it is entitled only to its proper weight. This principle came into existence during the early period of feudalism in England, when some public method of alienating land was made imperative by the illiteracy of the people. A proposed grantor and grantee went with witnesses to the land to be sold, and in the presence of the witnesses the grantor handed to the grantee a clod of dirt from the land, or other token; and this completed the investiture of the title. The advance of education has modified this principle to coincide with other modern conditions, so that the legal making, delivery, and recording of a deed passes the seisin without any formal entry. In states which have no statute against the

purchase of lands in adverse possession, this ancient principle does not vitiate a conveyance of lands adversely held. Purcell v. Barnett, 30 Okla. 605, 121 Pac. 231. The inhibitions of our statute, therefore, are not based on this principle, but upon its own provisions, withdrawing the implication of seisin. If the law requires a conveyance, the law, therefore, will imply seisin, if this be a necessary ingredient of the transaction.

The question now presents itself: Was the conveyance in this case such as to bring it within the inhibitions of the statute? Sections 1242 and 1243 of the Revised Laws of 1910 read as follows:

"1242. **Land Companies.** No corporation shall be created, licensed, or chartered in this state for the purpose of buying, acquiring, selling, trading, or dealing in real estate other than real estate located in incorporated cities and towns, and as additions to such cities and towns; nor shall any corporation doing business in this state buy, acquire, sell, trade, or deal in real estate for any purpose, except such lands as may be located in incorporated cities and towns, and as additions thereto, and except such as shall be necessary and proper for carrying on the business for which such corporation was licensed or chartered: nor shall any corporation be created, licensed, or chartered to do business in this state, for the purpose of acting as agent in buying or selling real estate, except as herein provided: Provided, however, that corporations shall not be precluded from taking mortgages on real estate to secure loans or debts or from acquiring title thereto upon foreclosure of such mortgages or in the collection of debts, conditioned that such corporation or corporations shall not hold any real estate so acquired for a longer period than seven years, and conditioned that disposition or incumbrance of such land shall in no way be made to another corporation, or corporations: Provided, further, that this section shall not apply to trust companies taking only the naked title to real estate in this state, as trustee, to be held solely as security for indebtedness pursuant to such trust.

"1243. **Disposition of Surplus Realty.** Every corporation doing business in this state which owns real estate, other than real estate within the corporate limits of cities and towns, or as additions to cities and towns, or either of such, shall, unless the same shall be necessary and proper for carrying on the business for which such corporations are licensed or chartered, sell and dispose of said real estate within a period of seven years from the 26th day of May, 1908: Provided, that all corporations which may hereafter acquire title to real estate upon foreclosure of mortgage or in collection of debts shall dispose of said real estate within a period of seven years from the date said title was acquired: Provided, further, that if at the expiration of seven years from the

date heretofore respectively mentioned, if such lands remain unsold, it shall be the duty of the county attorney of the county in which such real estate is situated to proceed by information in the name of the people of the state of Oklahoma against such corporation in the district court of such county, and such court shall hear and determine the facts and proceed against said property as in case of escheat."

Section 1242 is a re-enactment of the provisions of article 22, sec. 2, of the state Constitution. Both sections of the statute were enacted prior to the execution of the deed in controversy.

From a reading of these sections, the policy of our Constitution and laws with reference to corporate ownership of lands is clear, without comment. It is plain that it was absolutely required by law that the Iowa Land & Trust Company dispose of its interests in the real estate in this case within seven years from May 26, 1908. It would seem to be within the policy of the Constitution and laws of the state that such disposal should be had as quickly as possible. It would further seem to be within this policy, if not within the strict mandate, that the Iowa Land & Trust Company, having been organized for purposes inconsistent with these sections of the Constitution and statutes, should seek dissolution of its corporate existence at the earliest possible moment.

Article 5, c. 15, Revised Laws of 1910 (article 5, c. 20, Compiled Laws of 1909), expressly authorizes the voluntary dissolution of corporations, by action in the district court. The Iowa Land & Trust Company under the state laws could not continue to exercise the functions for which it was created. That it should take advantage of the provisions authorizing its dissolution was in strict accord with the law's policy.

Section 1279, Rev. Laws 1910 (section 1309, Comp. Laws of 1909), reads as follows, viz.:

"Unless other persons are appointed by the court, the directors or managers of the affairs of such corporation at the time of its dissolution are trustees of the creditors and stockholders or members of the corporation dissolved, and have full power to settle the affairs of the corporation, and to collect and pay debts and divide among the stockholders the property which remains after the payment of debts and necessary expenses; and for such purposes may maintain or defend actions in their own names by the style of the trustees of such corporation dissolved, naming it; and no action whereto any such corporation is a party shall abate by reason of such dissolution."

By the terms of this section of the statutes, the directors of a dissolving corporation are expressly designated as trustees of the stockholders for the purposes of winding up the affairs of the corporation, and dividing among the stockholders the property of the corporation; and a division of the property among the stockholders is specifically authorized.

Such a division is not alone authorized; but the implication is that it would be decreed by a court of equity, if not done voluntarily. We see no reason why this winding up of the affairs of the corporation, and division of its property among the stockholders, may not be accomplished prior to the decree of dissolution, and thus be in pursuance of the authority of this statute. The second paragraph of the second section of the chapter of the statutes on dissolution of corporations expressly provides that one of the allegations of the petition for dissolution shall be that all claims and demands against the corporation have been satisfied; and such was the finding of the decree of dissolution in this case. The affairs of the corporation being completely adjusted prior to the filing of the petition for dissolution, all stockholders consenting, it would seem a useless fiction to require the division to await the decree. At least it is sufficient to say that the decree having been entered, the division made prior thereto is but what would have been afterwards authorized and compelled, if not performed. A corporation is but an aggregation of persons, who are its members or stockholders, standing in the stead of the stockholders in the ownership and control of their property. When its ends have been accomplished and its other obligations discharged, and it is in bona fide process of dissolution, it seems to us not too much to say that, until the property of the dissolved corporation shall have been turned over to the directors as trustees, the corporation is in the nature of a trustee of the property for the stockholders, and that a division of this property, satisfactory to the stockholders, is but the performance of a trust.

If a dissolving corporation owns the title to real estate, such title is property which would be required to be divided among the stockholders. It does not seem that adverse possession in another party should be allowed to defeat the trust in favor of the stockholders, nor that the existence of the corporation, which is not in accord with the policies of the fundamental law of the state, should be continued for the sole purpose of litigating the question of the possession of the adversely held land. If the corporation may properly be dissolved under such circumstances, the

trust in favor of the stockholders as to this title would necessarily result. We see no reason why the directors of the deceased corporation, as trustees for the stockholders, should be required to bring the suit for possession; for we have seen that, under the authorities, the merger of the legal and equitable title in trust estates is not inhibited by the champerty statute on account of adverse holding. The title to the land is a unit of the trust property, and the statute specifically authorizes a division of this trust property by the directors as trustees. As we have said, we see no reason why the trust might not be performed by the corporation through its stockholders and directors, prior to the decree, as well as by the directors after the decree.

We conclude that, where a corporation was organized in the Indian Territory prior to statehood, having as the object of its existence dealing and trading in real estate, and where a continuance of the exercise of the functions for which such corporation was created is in violation of the express provisions of the Constitution and laws of the state, and the indefinitely continued ownership of real property by such corporation is contrary to the policy of such Constitution and laws, it is in accord with the policy of the Constitution and law of the state that such corporation seek voluntary dissolution and dispose of its lands; and where such a corporation, in bona fide compliance with such a policy of the law, in contemplation of such dissolution, which actually occurs within a reasonable time, as a step in the process of dissolution, divides its assets among its stockholders, and in making such division executes to one of such stockholders a conveyance of lands adversely held by a third person, such conveyance, being necessary to accomplish such dissolution and division of assets, is authorized by law and not in violation of the inhibitions of section 2260 of the Revised Laws of 1910, and it is not void as to such adverse holder, it being clear that such dissolution is had in good faith to comply with the policies of the law, and that the conveyance is a mere incident to and not the object of the dissolution.

Under this holding, the deed from the Iowa Land & Trust Company to plaintiff in error was not void on account of the adverse possession of the defendants in error; and the lower court erred in sustaining the demurrer of defendants to the evidence of plaintiff upon the ground of champerty in such deed.

The judgment of the lower court, therefore, should be reversed, and the cause remanded for proceedings in accordance herewith.

By the Court: It is so ordered.